Manzanet-Daniels, J.,
dissents in a memorandum as follows: On the date of the accident, plaintiff and a companion rode their bicycles to the entrance of the Central Park transverse road at West 65th Street. When they arrived at the transverse, a City Department of Transportation (DOT) employee, who had been sent to the area to repair damaged sections of roadway in *588 the transverse, was in the process of blocking the entrance to vehicular traffic. Plaintiffs companion asked the DOT employee if they could cross the park using the transverse, and the employee allowed them to proceed.
Although her companion crossed the transverse unharmed, plaintiff struck a large pothole, sustaining severe facial injuries, including fractures of her upper jaw bone, the loss of four front teeth, and avulsion injuries of her lips, chin, nose and face, requiring, to date, more than 21 surgeries to repair. Plaintiff alleges that the injuries she sustained were caused by the negligence of the DOT worker who permitted her to cross the park, knowing that there was a defect in the transverse, without providing adequate warning of the hazard. After the jury found that the DOT worker’s conduct was negligent and proximately caused plaintiffs injuries, the court granted defendant’s motion pursuant to CPLR 4404 to set aside the verdict on the ground that the City was immune from liability since the DOT worker’s conduct involved a discretionary act in connection with a governmental function. The majority now affirms.
It is well settled that the City may be held liable for negligence in the exercise of its “proprietary duty” to keep the roads and highways under its control in a reasonably safe condition (see Balsam v Delma Eng’g Corp., 90 NY2d 966 [1997]; Friedman v State of New York, 67 NY2d 271, 283 [1986]), and that the duty to maintain the roads includes an obligation to adequately warn users of “existing hazards” in the road (see Hicks v State of New York, 4 NY2d 1, 7 [1958]; Alexander v Eldred, 63 NY2d 460, 463-464 [1984]; Levine v New York State Thruway Auth., 52 AD3d 975, 976-977 [3d Dept 2008]).
“[I]t is the specific act or omission out of which the injury is claimed to have arisen and the capacity in which that act or failure to act occurred which governs liability, not whether the agency involved is engaged generally in proprietary activity or is in control of the location in which the injury occurred” (Miller v State of New York, 62 NY2d 506, 513 [1984] [internal quotation marks omitted]). In this case, the DOT employee’s claimed negligent act or omission was permitting plaintiff to use the roadway without providing any warning of a known dangerous condition. That conduct occurred while he was engaged in physical maintenance of the road, a proprietary act (see Levine at 976-977; Grant v Ore, 284 AD2d 302, 303 [2d Dept 2001]; compare Balsam, 90 NY2d at 968 [“No claim is made here that the police were charged with the responsibility to physically maintain the property (an icy road) where plaintiffs accident occurred”]).
*589 In my opinion, the majority takes too narrow a view of governmental functions. The majority focuses on the DOT employee’s actions in waving plaintiff and her companion through, rather than on the roadway activity the crew had been dispatched to perform, which clearly falls along the continuum of a proprietary function. The decision to allow plaintiff to proceed along the transverse cannot be viewed separately from the City’s proprietary function in maintaining the roadway. Here, the DOT employee was in the process of barricading an entrance to the traverse, an activity integral to his overall assignment of repairing hazardous roadway conditions. The fact that the specific function of barricading a street as part of a maintenance project might be one performed by a police officer, in my view, is not determinative of the governmental or proprietary nature of the activity. The DOT employee was not engaged in a traffic control exercise but rather was performing an act integral to his roadway maintenance duties. Accordingly, I would reverse the trial court’s order and reinstate the jury verdict. [Prior Case History: 33 Misc 3d 368.]